UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES M. COBB,

    Plaintiff,

v.                                    Case No. 03-CV-72041-DT

CRAIG HUTCHINSON, M.D. and BENCY
MATHAI, M.D.

    Defendants.
                                      /

**OPINION AND ORDER GRANTING DEFENDANTS'
"MOTION FOR SUMMARY JUDGMENT"**

Pending before the court is Defendants Craig Hutchinson, M.D.'s ("Dr. Hutchinson") and Bency Mathai, M.D.'s ("Dr. Mathai") "Motion for Summary Judgment." Plaintiff has failed to respond to the court's April 25, 2005 order directing him to file a response to Defendants' motion no later than May 6, 2005. (4/25/05 Order at 2.) The court has reviewed Defendants' motion and determined that no hearing is required. E.D. Mich. LR 7.1(e)(2).

**I. BACKGROUND**

Plaintiff Charles M. Cobb, an HIV-positive prisoner, alleges that Defendants Dr. Hutchinson and Dr. Mathai "have in the past, and continue to deny . . . Plaintiff life-sustaining medical care, treatment, and medications demonstrating deliberate indifference to . . . Plaintiff's serious medical needs resulting in the unnecessary and wanton infliction of pain, suffering, and mental anguish proscribed by the Eighth Amendment." (Pl.'s Compl. at 7-8.)

Dr. Huchinson is a licensed physician in the state of Michigan and he holds board certifications in internal medicine and infectious disease. (Hutchinson Aff. at ¶ 2.) He is employed by Correctional Medical Services ("CMS") as the Senior Regional Medical Director in Michigan, and as part of his duties he provides an infectious disease clinic for prisoners within the Michigan Department of Corrections ("MDOC"), including prisoners with HIV. (*Id.* at ¶¶ 3, 5.) Dr. Mathai is also a licensed physician in the state of Michigan and he holds board certifications in internal medicine. (Mathai Aff. at ¶¶ 1-2.) Dr. Mathai is an independent contractor with CMS and acts as a Medical Service Provider ("MSP") within the MDOC, providing primary care to prisoners. (*Id.* at ¶ 3.) Both doctors have treated Plaintiff in regards to his HIV-positive status during the course of his incarceration at Parnell Correctional Facility. (*Id.* at ¶ 14; Hutchinson Aff. at ¶ 6.)

In September 2002, Plaintiff's viral load elevated to 2250, a number that indicates that a patient's HIV medication is not working properly and he is possibly experiencing resistance to the medications; however his CD4 count remained stable at 410, indicating no related harm. At the time, Plaintiff's HIV medication regimen consisted of Combivir and Viracept. (Hutchinson Aff. at ¶ 8; Mathai Aff. at ¶ 7.) In December 2002, lab tests indicated that Plaintiff was developing a resistance to his current HIV medication. (Hutchinson Aff. at ¶ 9; Mathai Aff. at ¶ 8.)

In response to these lab tests, Dr. Hutchinson changed Plaintiff's HIV medication regimen on December 20, 2002, so that Plaintiff's HIV medication regimen consisted of Sustiva, Viread, Epivir, and Viracept. (Hutchinson Aff. at ¶ 9; Mathai Aff. at ¶ 8.) Dr. Hutchinson asserts that by February 4, 2003, Plaintiff's viral load was reduced to 194

and his CD4 count was 454 (within normal limits). (Hutchinson Aff. at ¶ 9; Mathai Aff. at ¶ 8.) Dr. Hutchinson further avers that, on February 10, 2003, Plaintiff stopped using one of his new medications (Sustiva) due to alleged side effects that he experienced, including diarrhea, back spasms, and hot flashes. (Hutchinson Aff. at ¶ 10; Mathai Aff. at ¶ 9.)[1]

On February 14, 2003, Dr. Hutchinson ordered Plaintiff to stop using all of his HIV medication in order to reevaluate his treatment. (Hutchinson Aff. at ¶ 10; Mathai Aff. at ¶ 9.) Plaintiff alleges that as a result of being taken off all of his medication, he experienced "serious side effects, including [an] inability to urinate for prolonged periods, sharp pain in [his] kidney area, hot flashes, blood in [his] stool, severe rashes over large areas of [his] body, unusual pain in [his] heart, [and] sudden nose bleeds several times per day." (Pl.'s Compl. at ¶ 7.) But, Dr. Hutchinson states that "while [Plaintiff was] denied HIV medication for 81 days, [during which time] he received no palliative care, the medical chart does indicate any complaints made by Plaintiff concerning side effects related to his medication prior to February 10, 2004." (Hutchinson Aff. at ¶ 15.)

On May 6, 2003, Dr. Hutchinson prescribed a new HIV medication regimen for Plaintiff, consisting of Viramune, Viread, and Viracept. (Hutchinson Aff. at ¶ 13.) According to Dr. Hutchinson, on May 19, 2003, Plaintiff's CD4 was 464 (within normal limits) and his viral load was elevated at 369, but by July 11, 2003, Plaintiff's viral load

---

[1] Plaintiff claims that "after taking the first dosage of the new five combination of AIDS medication, [he] suffered serious side effects, including rashes, drowsiness, day and night sweats, discolored urine, numbness in arms, hands, and feet, loss of appetite, nose bleeds, mental stress, and unusual pain in his heart." (Pl.'s Compl. at ¶ 3.)

3

was reduced to 103. (Hutchinson Aff. at ¶ 14.) Both Dr. Hutchinson and Dr. Mathai aver that they "acted in treating [Plaintiff] consistent with [their] knowledge and training in internal medicine and infectious disease, and consistent with then-existing standards regarding the treatment of HIV in the medical community." (Hutchinson Aff. at ¶ 16; Matthai Aff. at ¶ 15.) Relating to Plaintiff's allegations that three of his medical appointments were canceled, Dr. Hutchinson states that Plaintiff was scheduled for appointments with him on February 28, 2003 and March 5, 2003, and each time the appointment was rescheduled. (Pl.'s Compl. at ¶ 21; Hutchinson Aff. at ¶ 11.) He asserts that he does not know why the appointments were rescheduled, other than to "accommodate [his] demanding schedule." (Hutchinson Aff. at ¶ 11.)

On February 16, 2005, Defendants Dr. Hutchinson and Dr. Mathai filed their "Motion for Summary Judgment."

## II.  STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material. *See id* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'"). A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences from the admissible evidence presented in a manner most favorable to the nonmoving party. *Dunigan v. Noble*, 390 F.3d 486,492 (6th Cir. 2004) ("we must determine 'not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed.'") The court does not weigh the evidence to determine the truth of the matter, but must determine if the evidence produced creates a genuine issue for trial. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

### III. DISCUSSION

The Supreme Court has explained that prisoners have a constitutional right to medical treatment in certain circumstances under the Eight Amendment. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). In *Estelle*, the Court explained that a prisoner's Eighth Amendment right is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs. *Id.* at 104; *Comstock v. McCrary*, 273 F.3d 693, 702-03 (6th Cir. 2001); *see also Smith v. Yarrow,* 78 Fed. Appx. 529, 535 (6th Cir. Oct. 20, 2003); *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001) (violation of Eighth Amendment when prison officials are deliberately indifferent to serious medical needs of prisoners).

However, "[t]he Eighth Amendment does not apply to every deprivation, or even every unnecessary deprivation, suffered by a prisoner, but only that narrow class of deprivations involving 'serious' injury inflicted by prison officials acting with a culpable state of mind." *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (quoting *Hudson v. McMillian*, 503 U.S. 1, 20 (1992)). "A prison official cannot be found liable under the Eight Amendment for denying a prisoner humane conditions of confinement unless [he] knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "The Eighth Amendment does not outlaw cruel and unusual 'conditions;' it outlaws cruel and unusual 'punishments.'" *Id.*

A claim based on deliberate indifference to a prisoner's serious medical needs under the Eighth Amendment has two components, an objective and a subjective

6

component. *Comstock*, 273 F.3d at 702-03 (citing *Farmer*, 511 U.S. at 834). "To satisfy the objective component, the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* (citing *Farmer*, 511 U.S. at 834.) "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and he then disregarded the risk." *Id.* (citing *Farmer*, 511 U.S. at 837.) It is not enough that an official failed to alleviate a significant risk that *he should have perceived but did not*; in other words, negligence is not enough to rise to the level of punishment under the Eighth Amendment. *Id.* On the other hand, the plaintiff does not have to show that the official acted "for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. Deliberate indifference to a substantial risk of harm to the prisoner "is the equivalent of recklessly disregarding that risk." *Id.* at 836.

Defendants argue that "even if Plaintiff has shown he had a serious medical need, he cannot show that Defendants Dr. Hutchinson and Dr. Mathai, being aware of that need, acted with deliberate indifference to it. Plaintiff has failed to identify the particular conduct of defendants that is alleged to have harmed the plaintiff." (Defs.' Mot. at 13-14.) The court agrees. Plaintiff has not presented evidence sufficient to create an issue of material fact as to whether Defendants Dr. Hutchinson and Dr. Matthai subjectively perceived facts from which to infer substantial risk to Plaintiff, that they did in fact draw that inference, and they then disregarded the risk. *Farmer*, 511 U.S. at 834. In fact, the uncontroverted evidence presented shows that Defendants treated Plaintiff under the prevailing standard of care for prisoners with HIV. The fact

that medications, or the temporary cessation of them, produce side effects does not make out a cause of action for deliberate indifference to a serious medical need.

### IV. CONCLUSION

IT IS ORDERED that Defendants' unopposed "Motion for Summary Judgment" [Dkt. # 76] is GRANTED.

    S/Robert H. Cleland
    ROBERT H. CLELAND
    UNITED STATES DISTRICT JUDGE

Dated: May 27, 2005

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 27, 2005, by electronic and/or ordinary mail.

    S/Lisa G. Teets
    Case Manager and Deputy Clerk
    (313) 234-5522